# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | ) ) ) ) | Civil Action No. 13-0483 (ABJ) |
| Defendant, | ) ) ) | |
| and | ) ) ) | |
| NATIONAL CATTLEMEN'S BEEF ASSOCIATION, | ) ) ) ) | |
| Defendant-Intervenor | ) ) | |

## MEMORANDUM OPINION

Plaintiff Physicians Committee for Responsible Medicine brought this case against the United States Department of Agriculture ("USDA"), alleging that USDA violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, when it withheld in full or redacted in part documents that related to the government's dairy checkoff and beef checkoff programs that were responsive to plaintiff's FOIA request. *See* Compl. [Dkt. # 1].

Some of the disputed documents allegedly in USDA's possession that related to the dairy checkoff program were created by and received from an organization called Dairy Management, Inc. ("DMI"). The Court granted DMI's motion to intervene in the matter in order to resolve one narrow question: whether the documents created by DMI were "agency records" subject to FOIA. *See* Min. Order (Dec. 23, 2013). Because the Court answered the question in the affirmative,

defendant was required to process over 8,000 documents. *See* Mem. Op. & Order [Dkt. # 32] at 13. The review and production of those documents took approximately three and a half years to complete, and on July 20, 2017, the parties voluntarily dismissed Claims 1 and 2 of the complaint that related to the dairy checkoff program. Stip. of Dismissal [Dkt. # 73].

Claim 3, the only remaining claim before the Court, pertains to records involving the beef checkoff program. *See* Compl. ¶¶ 38–50. In the summary judgment motion now pending before the Court, plaintiff argues that the beef checkoff records created by another intervenor in this case, the National Cattlemen's Beef Association ("NCBA"), qualify as "agency records," and that defendant USDA has violated FOIA by refusing to search NCBA's files for responsive records. *See* Pl.'s Mot. for Summ. J. [Dkt. # 77] ("Pl.'s Mot."); Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. [Dkt. # 77] ("Pl.'s Mem.") at 1–2. Both defendant USDA and intervenor NCBA have filed cross-motions for summary judgment, contending that NCBA's records are not "agency records" subject to FOIA. *See* Def.-Intervenor NCBA's Cross-Mot. for Summ. J. & Opp. to Pl.'s Mot. [Dkt. # 80] ("NCBA Cross-Mot."); Def.-Intervenor NCBA's Mem. of P. & A. in Supp. of NCBA Cross-Mot. [Dkt. # 80-1] ("NCBA Cross-Mem."); USDA Cross-Mot. for Summ. J. as to Claim 3 & Opp. to Pl.'s Mot. [Dkt. # 83] ("USDA Cross-Mot.").[1]

Thus, the question before the Court is again a narrow one: whether the documents created by NCBA are subject to FOIA. This time, the answer is no.

---

1     The motions are fully briefed. *See* Pl.'s Mem. of P. & A. in Opp. to NCBA Cross-Mot. & Pl.'s Reply Mem. in Further Supp. of Pl.'s Mot. [Dkt. # 85] ("Pl.'s NCBA Cross-Opp."); Pl.'s Mem. of P. & A. in Opp. to USDA Cross-Mot. & Pl.'s Reply Mem. in Further Supp. of Pl.'s Mot. [Dkt. # 87] ("Pl.'s USDA Cross-Opp."); Def.-Intervenor NCBA's Reply in Supp. of NCBA Cross-Mot. [Dkt. # 90] ("NCBA Cross-Reply"); Def. USDA's Reply in Supp. of USDA Cross-Mot. [Dkt. # 91] ("USDA Cross-Reply").

## BACKGROUND

**I.     Regulatory Background**

USDA's Agricultural Marketing Service ("AMS") administers programs that create domestic and international marketing opportunities for U.S. producers of food, fiber, and specialty crops. Decl. of Kenneth Payne [Dkt. # 83-3] ("Payne Decl.") ¶¶ 5, 9. AMS, Research and Promotion Division, oversees six of these checkoff programs applicable to beef, eggs, lamb, pork, sorghum, and soybean. USDA Statement of Material Facts Not in Dispute in Supp. of USDA Cross-Mot. [Dkt. # 83-1] ("USDA SOF") ¶ 1; Pl.'s Resp. to USDA SOF [Dkt. # 87] ("Pl.'s Resp. to USDA SOF") ¶ 1.

Pursuant to the Beef Promotion and Research Act of 1985, 7 U.S.C. §§ 2901–2911, the USDA issued the Beef Research and Promotion Order ("Beef Order"), 7 C.F.R. §§ 1260.101–1260.217, which authorized the creation of the Beef Research and Promotion Program (the "beef checkoff") and the Cattlemen's Beef Promotion and Research Board ("Beef Board") to administer that program. *See* USDA SOF ¶¶ 2–3; Pl.'s Resp. to USDA SOF ¶¶ 2–3. The beef checkoff program was created to strengthen the beef industry's position in the marketplace, and it is funded by an assessment on all cattle sold in the United States and on cattle, beef, and beef products imported into the United States. 7 U.S.C. § 2901(b).

The Beef Board is comprised of beef, dairy, and veal producers and importers of live cattle and beef products who are all appointed by the Secretary of Agriculture. Payne Decl. ¶ 18. AMS maintains regulatory oversight and authority over the Beef Board. USDA SOF ¶ 6; Pl.'s Resp. to USDA SOF ¶ 6.

The Beef Board operates through the Beef Promotion Operating Committee ("BPOC"), which serves as the beef checkoff's central programmatic decision making body. USDA SOF ¶ 3;

Pl.'s Resp. to USDA SOF ¶ 3. As directed by statute, BPOC must contract with established "national nonprofit industry-governed organizations . . . to implement programs of promotion, research, consumer information, and industry information," and the contracts must provide that the contracting party "shall keep accurate records of all of its transactions, account for funds received and expended, and make periodic reports to the Committee of activities conducted, and such other reports as the Secretary, the Board, or the Committee may require." 7 U.S.C. § 2904(6); *see also* USDA SOF ¶ 4; Pl.'s Resp. to USDA SOF ¶ 4. The National Cattlemen's Beef Association is the largest contractor to the beef checkoff program. USDA SOF ¶ 5; Pl.'s Resp. to USDA SOF ¶ 5. AMS reviews and approves BPOC's annual contracts with NCBA and other contractors. USDA SOF ¶ 7; Pl.'s Resp. to USDA SOF ¶ 7.

NCBA is a private corporate non-profit organization, not a government created entity, and its budget is not subject to approval by any USDA entity. USDA SOF ¶ 8; Pl.'s Resp. to USDA SOF ¶ 8; NCBA Statement of Material Facts as to Which There is no Genuine Dispute [Dkt. # 80-3] ("NCBA SOF") at 5 ¶¶ 1–3, 5; Pl.'s Resp. to NCBA SOF [Dkt. # 85] ("Pl.'s Resp. to NCBA SOF") ¶¶ 1–3, 5. It employs approximately 130 employees and it is managed through its Executive Committee, which has no members that are federal government employees. NCBA SOF ¶ 4; Pl.'s Resp. to NCBA SOF ¶ 4. Other than being a beef checkoff contractor, the non-profit serves as a "membership organization with more than 24,000 members" and as a "policy advocate." NCBA SOF ¶ 1; Pl.'s Resp. to NCBA SOF ¶ 1.

Every year, NCBA enters into an annual operating agreement with BPOC. NCBA SOF ¶ 6; Pl.'s Resp. to NCBA SOF ¶ 6; *see also* Evans Decl. [Dkt. ## 80-4, 82-1] ¶ 20; Ex. A to Evans Decl. [Dkt. ## 80-6, 82-2] ("Operating Agreement"). The Beef Board relies on NCBA to "provide various support, management, programs, and other deliverables for [the Board] and

4

BPOC for the benefit of the beef checkoff program." NCBA SOF ¶ 6; Pl.'s Resp. to NCBA SOF ¶ 6. NCBA is reimbursed for its work through authorization requests, NCBA SOF ¶ 7; Pl.'s Resp. to NCBA SOF ¶ 7; *see also* Operating Agreement at 5 ¶ F, which must detail the goals of the program and estimate the cost of it. *See* Operating Agreement at 4–5 ¶¶ E–F; Ex. A to Operating Agreement.

The Operating Agreement states that NCBA is required to provide BPOC with "interim reports of activity as specified on an authorization request or otherwise requested by the Committee." Operating Agreement at 4 ¶ E(4). It also provides:

> Contractor shall: [k]eep accurate records and all supporting documentation . . . relating to performance of authorization requests and shall, upon reasonable notice of no more than seven days, make those records available to the Committee, the Board and the Secretary of Agriculture for inspection and audit during the term of this agreement and for three years after its termination . . . .

Operating Agreement at 6 ¶ H(1)(a). But, NCBA "retains partial ownership rights over records generated in the course of its beef checkoff contract work." NCBA SOF ¶ 8; Pl.'s Resp. to NCBA SOF ¶ 8; *see also* Operating Agreement at 6–7 ¶ I ("Ownership of patents, copyrights, trademarks, inventions and publications . . . created or acquired in whole or in part with funds from [BPOC] shall be in proportion to the share of production costs . . . paid by each contributor.").

## II. Factual Background

Plaintiff Physicians Committee for Responsible Medicine is a non-profit health organization that advocates for preventative medicine through proper nutrition and encourages higher standards for ethics in medical research. Compl. ¶ 2. On January 25, 2012, plaintiff submitted a FOIA request to USDA, Agricultural Marketing Service.[2] Pl.'s Statement of Material

---

2    On September 15, 2010, plaintiff submitted another FOIA request relating to the dairy checkoff program, *see* Compl. ¶ 20, but all disputes related to that request have been dismissed. *See* Stip. of Dismissal [Dkt. # 73].

5

Facts Not in Genuine Dispute [Dkt. # 77] ("Pl.'s SOF") at 17 ¶ 1; USDA Statement Addressing Pl.'s SOF [Dkt. # 83-2] ("USDA Resp. to Pl.'s SOF") ¶ 1; *see* Decl. of Valerie L. Emmer-Scott [Dkt. # 14-3] ("Emmer-Scott Decl.") ¶ 32; Ex. O to Emmer-Scott Decl. [Dkt. # 14-17] ("FOIA Request").[3] It requested "copies of records related to the beef checkoff program managed by the Cattlemen's Beef Promotion And Research Board" between January 1, 1997 and the date of fulfillment of the request. FOIA Request.

Plaintiff sought twenty-one categories of records, *see* FOIA Request, which consisted of records concerning the relationship between the beef checkoff program and various committees and researchers from the American Academy of Pediatrics. Pl.'s SOF ¶ 1; USDA Resp. to Pl.'s SOF") ¶ 1; *see also* FOIA Request (requesting communications between, for example, the beef checkoff and the American Academy of Pediatrics Committee on Fetus and Newborn, the Committee on Psychosocial Aspects of Child and Family Health, and the Section on Administration and Practice Management). AMS responded to plaintiff's request on July 20, 2012, stating that "searches were conducted by AMS and the Cattleman's [*sic*] Beef Promotion and Research Board, and no records responsive to [the] request were located." Ex. Q to Emmer-Scott Decl. [Dkt. # 14-19] at 3; Pl.'s SOF ¶ 2; USDA Resp. to Pl.'s SOF ¶ 2.

On July 30, 2012, plaintiff filed an administrative appeal challenging defendant's search as inadequate. Pl.'s SOF ¶ 3; USDA Resp. to Pl.'s SOF ¶ 3; *see also* Ex. R. to Emmer-Scott Decl. [Dkt. # 14-20] ("Appeal Letter"). In its appeal, plaintiff noted that at least two responsive documents were publicly available on defendant's beef checkoff websites, and it insisted that

---

3   The parties filed cross-motions for summary judgment in 2013, *see* Def.'s Mot. for Summ. J. [Dkt. # 14]; Pl.'s Mot. for Summ. J. [Dkt. # 15], and they attached a number of exhibits. In their currently pending motions for summary judgment, the parties refer back to exhibits previously filed. Since those exhibits are part of the entire record in this case, the Court will cite to them when necessary.

6

because of defendant's failure to identify and produce those documents "there is no reason to believe that AMS or the Beef Board adequately searched for documents in any of the twenty other categories involving similarly-situated researchers and entities." Appeal Letter at 2. The parties conferred to discuss plaintiff's request and appeal, and defendant ultimately produced three responsive records on October 23, 2012. Pl.'s SOF ¶ 18; USDA Resp. to Pl.'s SOF ¶ 18. Defendant stated that it had produced all responsive records in its possession, so it asked plaintiff to withdraw its appeal. Pl.'s SOF ¶ 18; USDA Resp. to Pl.'s SOF ¶ 18.

During the parties' discussions surrounding plaintiff's request, defendant determined that responsive documents would likely be in NCBA's possession since it had a long-standing history of carrying out nutrition research for the beef checkoff program. Pl.'s SOF ¶ 7; USDA Resp. to Pl.'s SOF ¶ 7. But there is no dispute that neither AMS nor the Beef Board has requested or received any responsive NCBA records, NCBA SOF ¶¶ 12, 15; Pl.'s Resp. to NCBA SOF ¶¶ 12, 15, and the NCBA records have never been in AMS's or the Board's possession, custody, or control. NCBA SOF ¶¶ 12, 16; Pl.'s Resp. to NCBA SOF ¶¶ 12, 16. Further, if any responsive records exist, "AMS and USDA would not have supervised NCBA during the creation, production, and management of any such NCBA [r]ecords." NCBA SOF ¶ 14; Pl.'s Resp. to NCBA SOF ¶ 14.

Because plaintiff believes that USDA's search is inadequate since it has not requested records from NCBA, it did not withdraw its appeal. *See* Pl.'s SOF ¶¶ 18–19; USDA Resp. to Pl.'s SOF ¶¶ 18–19; *see also* Third Decl. of Mark Kennedy [Dkt. # 77-2] ("Third Kennedy Decl.") ¶ 13; Ex. A to Third Kennedy Decl. [Dkt. # 77-3] (email stating that plaintiff did "not foresee [it] withdrawing its appeal without a more substantial response"). Defendant did not provide any further response to plaintiff, Compl. ¶ 48, so plaintiff filed this lawsuit. Part of the relief plaintiff seeks is for the Court to order defendant USDA to "search for and produce all responsive

7

records . . . including beef checkoff records maintained, at USDA's request, by NCBA." Compl. at 15 ¶ D.

On September 5, 2017, NCBA filed a motion to intervene in the case to "protect its documents and property from search and disclosure under FOIA because NCBA's documents and property are not 'agency records' as defined under FOIA." NCBA Consent Mot. to Intervene [Dkt. # 74] ("NCBA Consent Mot."); Mem. of P. & A. in Supp. of NCBA Consent Mot. [Dkt. # 74] at 2. Plaintiff and defendant USDA consented to the motion, NCBA Consent Mot. at 1, and the Court granted it the next day. Min. Order (Sept. 6, 2017).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (alteration in original), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson*, 477 U.S. at 247.

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate. *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

Under FOIA, a district court has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records," 5 U.S.C. § 552(a)(4)(B), only if it is shown that the "agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989), quoting *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure

requirements." *Tax Analysts*, 492 U.S. at 142; *see also Wolfe v. Dep't of Health and Human Servs.*, 711 F.2d 1077, 1079 (D.C. Cir. 1983) ("A threshold inquiry in any FOIA case is whether the documents requested are in fact 'agency records.'").

The issue before the Court is whether any records maintained by NCBA qualify as "agency records" subject to disclosure under FOIA. NCBA argues that its records are "not 'agency records' just because [the Board] . . . has the authority to audit NCBA's performance on its contracts." NCBA Cross-Mem. at 4. The Court agrees.

The Supreme Court and D.C. Circuit have repeatedly noted that FOIA does not provide any definition of "agency records." *See, e.g.*, *Forsham v. Harris*, 445 U.S. 169, 178 (1980); *Tax Analysts*, 492 U.S. at 143; *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215–16 (D.C. Cir. 2013). In *DOJ v. Tax Analysts*, the Supreme Court established a two-prong test to determine whether documents qualify: the first prong asks whether the records were created or obtained by the agency, and the second prong considers the extent to which the agency was in control of the records at the time the FOIA request was made. 492 U.S. at 144–45; *see also Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (laying out a four-factor test to determine if an agency was in "control" of the documents). Therefore, to qualify as an "agency record" subject to FOIA's disclosure rules, defendant must have created or obtained the records, *and* have been in control of the records at the time the FOIA request was made. The agency has the burden of demonstrating that the materials sought are not agency records. *Tax Analysts*, 492 U.S. at 142 n.3.

Because the Court finds that defendant did not create or obtain the documents at issue, the NCBA records are not "agency records" under FOIA. And even assuming that the Court found

that defendant obtained the documents, defendant did not, under the four *Burka* factors, control them at the time the FOIA request was made.

**I.     USDA has not obtained the requested NCBA beef checkoff records.**

Under the first step of the *Tax Analysts* inquiry, a court must consider whether the records requested were created by or obtained by the agency subject to the FOIA request. 492 U.S. at 144–45. Here, there is no question that the Beef Board, AMS, and USDA did not create the records plaintiff seeks; those records were created by NCBA. *See* Pl.'s Mem. at 10 (admitting that NCBA created the records). Therefore, to find this first prong satisfied, USDA, AMS, or the Beef Board must have "obtained" the documents.

While the Supreme Court has not determined what "agency conduct is necessary to support a finding that [it] has 'obtained' the documents, at the least, the agency cannot have 'obtained' documents until it has possession . . . over them." *Wolfe v. Dep't of Health and Human Servs.*, 711 F.2d 1077, 1080 (D.C. Cir. 1983). For FOIA purposes, possession "embodies more than the mere physical location of the documents; the agency must actually have custody of the documents. There must be some 'nexus' between the agency and the documents other than the mere incidence of location." *Id.*; *see also Kissinger*, 445 U.S. at 157 (declining to "hold that the physical location of the notes of telephone conversations rendered them 'agency records'" because they were not generated or used by the State Department, they never entered the State Department's files, and the State Department was not in control of the documents).

Plaintiff rests its entire argument on the fact that the agency has the authority to audit NCBA's records. It maintains that defendant has "obtained" the records because the agency "has unfettered access to NCBA's beef checkoff records" based on its ability to audit the records under the applicable regulations and the governing Operating Agreement. Pl.'s Mem. at 10–11.

11

But the Supreme Court held in *Forsham v. Harris* that documents an agency has the right to acquire would not become agency records subject to FOIA "unless and until the right is exercised." 445 U.S. at 181; *see also Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) (holding that the agency's "unexercised right to use and dispose of the records requested in this case is not enough to subject those records to FOIA"). Thus, "agencies' right of access to the materials" does not transform records into "agency records" under FOIA. *Tax Analysts*, 492 U.S. at 144 (discussing *Forsham*). That is because "FOIA applies to records which have been *in fact* obtained, and not to records which merely *could have been* obtained." *Forsham*, 445 U.S. at 185–86 (emphasis in original).

While NCBA admits that some of its records "are subject to review by AMS in a contractual audit function," NCBA Cross-Mem. at 14, there is no dispute that neither AMS nor the Beef Board has requested or received the relevant NCBA records, and that "NCBA has never turned over records to AMS [or] USDA." NCBA SOF ¶¶ 12, 15; Pl.'s Resp. to NCBA SOF ¶¶ 12, 15. Further, it is undisputed that NCBA records have never been in AMS's or the Board's possession, custody, or control. NCBA SOF ¶¶ 12, 16; Pl.'s Resp. to NCBA SOF ¶¶ 12, 16.

By ordering the agency to "exercise its right of access," the Court "effectively would be compelling the agency to 'create' an agency record," and this would "extend the reach of [FOIA] beyond what . . . Congress intended." *Forsham*, 445 U.S. at 186. Therefore, the Court concludes that defendant did not create or obtain the records at issue, and they do not qualify as "agency records" under FOIA.

**II.     USDA did not control the requested NCBA beef checkoff records either.**

Even if the Court could find that defendant created or obtained the records, the second prong of the *Tax Analysts* inquiry would not be met because defendant did not control the records

at the time the FOIA request was made. Control means that "the materials have come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145. The D.C. Circuit has established a four part test to apply when addressing the question of whether an agency was in control. The Court should consider:

> (1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.

*Burka*, 87 F.3d at 515, quoting *Tax Analysts v. DOJ*, 845 F.2d 1060, 1069 (D.C. Cir. 1988).[4] The Court of Appeals has held that this is a "totality of the circumstances test," *Consumer Fed. of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006), but that the third factor – the degree to which an agency has used the document – is the "decisive factor." *Judicial Watch, Inc.*, 646 F.3d at 927–28.

First, NCBA intends to retain control of its records and intellectual property, as evidenced by the undisputed facts in this case and the provision in NCBA's Operating Agreement governing NCBA's ownership rights. NCBA SOF ¶¶ 6, 8; Pl.'s Resp. to NCBA SOF ¶¶ 6, 8 ("NCBA retains partial ownership rights over records generated in the course of its beef checkoff contract work."); *see also* Operating Agreement at 6–7 ¶ I. So this factor weighs in favor of defendant.

---

4  The D.C. Circuit has questioned the helpfulness of the four *Burka* factors. *See Cause of Action v. Nat'l Archives & Records Admin.*, 753 F.3d 210, 214–15 (D.C. Cir. 2014) (noting that the Court's past application of the test revealed "its considerable indeterminacy," particularly in cases where the agency documents "do not present the sort of questions the *Burka* test purports to answer"), quoting *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013). Because the precedent has not been formally overturned, the factors are fairly easy to apply in this case, and they are consistent with the outcome under the first prong of the *Tax Analysts* test, the Court sees no reason not to use the test here. *See Beveridge & Diamond, P.C. v. U.S. Dep't of Health & Human Servs.*, 85 F. Supp. 3d 230, 239–40 (D.D.C. 2015) (using the same approach).

Second, while the agency may have a right to audit certain NCBA records, it is undisputed that it has not exercised that right. *See* NCBA SOF ¶¶ 12, 15–16; Pl.'s Resp. to NCBA SOF ¶¶ 12, 15–16. Further, the record is devoid of any evidence regarding the agency's ability to dispose of NCBA records, and plaintiff does not contend that the agency has such authority. *See* Pl.'s Mem. at 13; Pl.'s NCBA Cross-Opp. at 12; Pl.'s USDA Cross-Opp. at 12. At best for plaintiff, this factor is neutral.

Turning to the third and most important *Burka* factor, which focuses on the extent to which agency personnel have read or relied upon the document, it is undisputed that "AMS has no knowledge of any USDA personnel having either read or relied on the records in question." *See* USDA SOF ¶ 13; Pl.'s Resp. to USDA SOF ¶ 13. "[W]here an agency has neither created nor referenced a document in the 'conduct of its official duties,' the agency has not exercised the degree of control required to subject the document to disclosure under FOIA." *Judicial Watch, Inc.*, 646 F.3d at 928 (citation omitted). Thus, this third factor is fatal to plaintiff's claim.

Finally, the fourth factor instructs the Court to consider "the degree to which the document was integrated into the agency's record system or files." *Burka*, 87 F.3d at 515. Here, "the degree is none at all." *Judicial Watch, Inc.*, 646 F.3d at 928. "It goes without saying that an agency cannot integrate into its record system a document created by a third party that none of its employees have read . . . ." *Id.*

Therefore, defendant did not control the records in question at the time the FOIA request was made.

## CONCLUSION

The Court finds that defendant USDA neither created nor obtained the NCBA beef checkoff records, and it was not in control of them at the time the FOIA request was made.

Therefore, the documents do not qualify as "agency records" subject to FOIA, and the Court will grant USDA's and NCBA's cross-motions for summary judgment and deny plaintiff's motion for summary judgment.

A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: May 25, 2018